[No. 34721.  *En Banc.*  November 5, 1959.]

CLIFFORD CLEVENGER *et al., Respondents,* v. LYNDEN F. FONSECA, *Appellant.*[1]

[1]Reported in 345 P. (2d) 1098.

*Metzger, Blair & Gardner,* for appellant.

*Parker & Borawick,* for respondents.

HUNTER, J.—This is an appeal from a judgment on a jury verdict awarding damages to the plaintiffs (hereinafter referred to in the singular). The action arose from a rear-end automobile collision at approximately 2:30 o'clock on the afternoon of April 3, 1957, on state highway No. 99, about four miles north of Tacoma. The road was a four-lane divided highway with a surfaced shoulder of an additional eight foot width. About three hundred yards to the rear of the scene of the accident was the crest of a hill. The road was dry and visibility was clear. Velma Clevenger, the plaintiff wife, testified that on that afternoon she was driving in a southerly direction in her 1951 Ford automobile from her place of employment to her home in Tacoma. In passing an auto transport truck on the crest of the hill, she noticed a school bus ahead of her giving a directional signal and pulling to the side of the road; that she slowed her vehicle and gave an arm signal as she approached; that she remained in the inside lane while coming to a stop to give

the transport truck, which she passed, room in which to stop. As she slowed her vehicle she observed two red blinker lights at the top of the bus and a stop sign signal extended from the left side. In addition, she saw two lighted brake lights and a lighted directional light; that her brake lights were lighted while she remained stopped waiting for the children to be discharged from the bus. At the time, the front end of her car was to the left and about even with the back of the bus. While in this position, her car was struck in the rear by a car operated by the defendant Lynden F. Fonseca. The evidence further discloses that the bus driver brought the bus to a stop, partially off the paved portion of the roadway onto the shoulder, for the purpose of discharging two school children. He testified that in addition to stop and blinker lights on the rear of the bus there was an 18½ by 24 inch sign with the lettering "Unlawful to pass school bus when loading or unloading children"; that just before hearing the squeal of brakes, prior to the collision, the two passengers had been discharged but he had not closed the door; that it normally takes not more than thirty seconds to discharge two passengers.

The defendant, a citizen of Canada, testified that while traveling in a southerly direction, he passed a large truck at the crest of the hill and saw children being discharged from a school bus; that he saw no stop signal or flashing lights on the bus and assumed there was no requirement to stop after the children had alighted; that he observed Mrs. Clevenger's car between six to eight hundred feet ahead, which appeared to be moving, astride the white line between the inner and outer lanes; that when he was within two hundred fifty feet from the bus he suddenly realized that her car was in the act of stopping and he immediately applied the brakes, but failed to bring his car to a stop in time to avoid the collision. Defendant's car left heavy skid marks of one hundred feet in length. From the force of the impact, the Clevenger car was shoved one hundred fifty to two hundred feet down the road. As a result of the collision, plaintiff Mrs. Clevenger sustained serious injuries for which she seeks recovery, together with loss of earnings,

hospital and medical expenses, drug expenses, and damages to her car in the amount of fifty dollars. At the conclusion of the trial, the jury awarded damages to the plaintiff in the sum of twenty-seven thousand five hundred dollars. Judgment having been entered upon the verdict by the trial court, the defendant appeals.

■ The appellant makes ten assignments of error which we will consider in order. Error is assigned to the trial court's failure to give appellant's proposed instruction setting forth the requirements of RCW 46.48.290 relative to parking. This assignment is without merit. The statute relates to voluntary parking along public highways and has no relation to involuntary stopping in the arteries of traffic, as in the instant case. The statute was so construed in the recent case of *Larson v. Stadelman Fruit, Inc.*, 53 Wn. (2d) 135, 332 P. (2d) 52 (1958), which is controlling here.

The appellant's second and third assignments of error relate to the failure of the court to give appellant's proposed instructions setting forth all the requirements of RCW 46-.48.140 relative to stopping behind a school bus discharging passengers, and in giving instruction No. 15.

Appellant's proposed instruction in the language of the statute was as follows:

"The statutes of the State of Washington provide in part as follows:

" 'It shall be unlawful for any person operating a motor vehicle in the same direction as a school bus upon a multiple-lane public highway to fail to bring such vehicle to a complete stop at least twenty feet away and on the approach to any school bus on or off the roadway displaying such stop signal and remain standing until the same is released. Compliance with the above stopping provisions of this section shall not relieve any motor vehicle operator of the further duty to exercise reasonable care in approaching or passing any school bus.' "

Instruction No. 15 given, reads as follows:

"You are instructed that the laws of the State of Washington require every person operating a motor vehicle upon a multiple lane public highway to bring his vehicle to a stop when approaching any school bus stopped on his right side on or off the roadway, which is displaying a stop sign and

flasher signal lamps, and to remain stopped until the stop sign is released and the flasher lamps turned off."

■ Appellant objects to the limiting of the phrase "complete stop" to "stop." This is a distinction without a difference. Appellant's chief objection, however, is to the failure of the court's instruction to include the provision requiring the operator of a motor vehicle to "stop at least twenty feet away" on the approach to a school bus, under the conditions set forth in the statute.

■ It is of course negligence *per se* to operate a vehicle without complying with the positive requirements of a statute or ordinance. The law is equally clear that there is no liability for such negligence unless an injury is sustained by a third person, which was proximately caused by the act of negligence in violation of the statute. *White v. Kline*, 119 Wash. 45, 204 Pac. 796 (1922); *Perren v. Press*, 196 Wash. 14, 81 P. (2d) 867 (1938); *Wheaton v. Stuck*, 34 Wn. (2d) 725, 209 P. (2d) 377 (1949). There was a complete absence of proof of such a causal relation in this case. The collision into the rear of the respondent's car by the appellant's car was not in any way related to a violation of this statute by the respondent's failure to stop twenty feet behind the school bus. The twenty-foot stopping provision of the statute was further inapplicable under the facts of this case, in that it was intended to protect school children being discharged from school buses and not operators of vehicles approaching from the rear. The rule is well settled that violation of a statute is not negligence *per se* except as to persons within the class intended to be protected by the statute. *Erickson v. Kongsli*, 40 Wn. (2d) 79, 240 P. (2d) 1209 (1952).

The trial court did not err in refusing appellant's instruction and in giving instruction No. 15 in lieu thereof.

Appellant's fourth assignment of error was to the court's giving instruction No. 14, which reads:

"If you find that the plaintiff was guilty of negligence which had terminated prior to the accident, leaving plaintiff in a position of peril from which she could not extricate her-

self by the exercise of reasonable care, and that the defendant either saw such peril or, by the exercise of reasonable care, should have seen it in time to have avoided the accident by the exercise of reasonable care, the law requires the defendant to avail himself of the last clear chance to avoid the accident. If he failed to do so, the defendant would be liable for damages suffered by plaintiff as a result of such accident, notwithstanding plaintiff's negligence."

█ The instruction covers the second phase of the last clear chance doctrine. We again stated the doctrine in the recent case of *Sinclair v. Record Press, Inc.*, 52 Wn. (2d) 111, 323 P. (2d) 660 (1958), quoting therein from *Klouse v. Northern Pac. R. Co.*, 50 Wn. (2d) 432, 312 P. (2d) 647 (1957), as follows:

" ' . . . The last clear chance rule, as applied in Washington, has two phases. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant actually sees the peril; in the second, the plaintiff's negligence must have terminated or culminated in a situation of peril from which the plaintiff could not by the exercise of reasonable care, extricate himself if the defendant did not actually see the peril, but in the exercise of reasonable care should have seen it. . . .' "

█ Applying the second phase of the doctrine to the facts of this case, it is clear from the evidence that the respondent's car and the school bus were in full view of the appellant for a distance of between six to eight hundred feet prior to the collision. There was direct testimony in the record that respondent had come to a stop long enough for the bus driver to discharge two passengers. The jury could thereby conclude that there was ample time for the appellant to ascertain the respondent's peril ahead and to have avoided the collision. From the evidence, the jury could further conclude that the respondent was waiting for the signal from the bus driver to proceed when her car was struck; that she was not aware of her peril, nor would she, as a prudent person, have known of her peril in time to extricate herself therefrom. The second phase of the doctrine was applicable, and the court did not err in giving instruction No. 14, under the evidence in the case.

The appellant's fifth assignment of error was to the trial court's refusal "to give appellant's proposed instruction withdrawing the issue of a fracture" from the jury.

Excerpts of testimony by Dr. Paul E. Noffsinger, who was called as an expert for the respondent, are as follows:

"A. Well, her clinical symptoms were quite severe, and after her injury she was in shock and her blood pressure was quite unstable, and for that reason we concluded that she must have had quite an extensive injury around the vital centers of the central nervous system; a contusive injury to the cord high up, or in the cervical area."

"A. My diagnosis was a cervical, lumbar and thoracic sprain, severe cervical, and moderate type of lumbar sprain. Her cervical and thoracic sprain was combined, of course, and *with the probabilities of a fracture line* at the base of the odontoid process."

"A. That is the only X-ray that it was quite suggestive, and, of course, with her clinical symptoms and the shock symptoms that she had and the problem of her controlling her blood pressure it was quite evident that she had a very severe contusion of the central nervous system around the centers that control the blood pressure mechanism, which is in that area, and with this evidence and the clinical manifestations it was concluded that she must have had quite a severe injury and *an injury enough to cause this fracture line across the base of the odontoid process.*" (Italics ours.)

From this testimony, the jury was entitled to believe that the respondent had a fracture line at the base of the odontoid process. The test to be applied as to the sufficiency of expert medical testimony to establish a medical finding was last stated in *Barrett v. Department of Labor & Industries,* 52 Wn. (2d) 439, 325 P. (2d) 896 (1958), where we said "The rule is that it must appear from medical testimony that the incident relied upon was more likely than not the cause of the injury claimed." See, also, *Stampas v. Department of Labor & Industries,* 38 Wn. (2d) 48, 227 P. (2d) 739 (1951). Applying this test there was clearly a jury question, and the trial court did not err in refusing to take this issue from the jury.

Appellant's sixth assignment of error is to the failure of the trial court to grant appellant's motion to strike

the following testimony of Dr. Paul Shelton, for the reason that it did not measure up to the rule requiring reasonable certainty:

"A. My opinion is that as a result of her trauma she probably suffered a contusion, and she possibly has a post-traumatic syndrome due to the spasm of the muscles in the cervical area and it aggravates this headache; more or less keeps it as a source of irritation to her."

The trial court correctly denied the motion. The doctor, as an expert witness, was entitled to express his opinion as to the respondent's condition and the cause, based upon his examination. The objection went to the weight of the testimony rather than to the admissibility, which was a question for the jury's consideration under the appropriate instructions given. See *Hines v. Foster*, 166 Wash. 165, 6 P. (2d) 597 (1932). If the appellant were attempting to challenge the sufficiency of the evidence on this issue of damages, it was premature; the appropriate time was at the conclusion of all the evidence in the case, by requesting that this issue of damages be withdrawn from the consideration of the jury.

Appellant's seventh assignment of error was to the giving of the court's instruction No. 24 on damages. We find no merit to the claimed error except as it applies to the paragraph on mental suffering, anxiety, distress, grief and mortification. We feel that the extent of the evidence on this issue did not justify the emphasis that was placed on this element of damage in the instruction, which we do not approve. However, the jury could have concluded from the evidence that the appellant was mentally distressed over her inability to attend to her habits of personal hygiene, while in the body cast for eighty-seven days; that she had an apprehension about needles and the necessity for future injections into the bursa, with a one and one-half inch needle, for a period of approximately five minutes at each injection; that she was distressed over her inability to engage in fishing, hunting, bowling, swimming, and outdoor activities with her son, all of which she was

able to do prior to her injury; and that her emotional strain, resulting from the injury, was sufficient to cause the re-activation of a stomach ulcer. The jury could have further concluded from the evidence: after the accident, while in the hospital, she was placed in cervical traction for six-teen days; she wore a body cast, extending from her hips to the base of her skull, for eighty-seven days; she had a compression of the eleventh and twelfth vertebrae, an-terior portion, and a fracture at the base of the odontoid process; she had a permanent partial disability in the area of her neck and between the shoulders; there was marked limitation of motion in the bending and extension of her neck; there was tenderness in the posterior neck regions on both sides and above the inner aspect of each shoulder blade; there was tenderness over the lower dorsal spine and above the right greater trochanter attributed to tro-chanter bursitis; there was an absence of a normal cervi-cal curve of the spine, which will cause the body to com-pensate by arching the low back; she suffered severe head pains; medical, hospital, drug and ambulance bills, and cost of orthopedic appliances totaled $2,085.56; she sus-tained a loss of earnings of $770, and will be unable to pursue her normal employment as a waitress.

Considering the foregoing evidence, the extent of re-spondent's injuries, and the special damages incurred, as related to the jury's award of $27,500, we cannot say that the appellant was denied a fair trial by the manner in which the challenged instruction was given on this ele-ment of damage.

Appellant's eighth assignment of error is to the court's failure to strike the testimony of the witness Ernest E. Schneider, that appellant's car was "traveling at a great rate of speed," for the reason that he only observed ap-pellant's car for a distance of about three car lengths be-fore appellant started applying his brakes, and that his testimony was contradictory. The witness was the driver of the transport truck following the school bus in the out-side lane. He was in a most advantageous position to ob-serve appellant's car as it passed, during the time it was

within his vision; that a lay witness may give his estimate of the speed of a moving vehicle by his own observation is a well-established rule of law. Such a phrase as used by the witness in this instance was approved in 20 Am. Jur. 678, Evidence, § 805. The objection goes to the weight rather than to the admissibility of the testimony. *Hines v. Foster, supra.*

Appellant's ninth assignment of error is without merit. We simply say that the objection raised to the court's instruction No. 8 therein, is cured by considering all of the instructions together, which the jury was directed to do in instruction No. 27.

The appellant's tenth assignment of error is to the failure of the court to grant the appellant's motion for a new trial. This is based upon the assignments of error which we have considered and therefore requires no further comment.

We are satisfied that no error was committed except as referred to in the discussion of appellant's seventh assignment of error. Having determined that it was not prejudicial to the extent of denying the appellant a fair trial, the judgment upon the verdict should be affirmed.

It is so ordered.

MALLERY, FINLEY, ROSELLINI, OTT, and FOSTER, JJ. concur.

DONWORTH, J. (dissenting in part) — I dissent from that part of the majority opinion relating to instruction No. 24. The third paragraph thereof permits the jury to allow respondent compensation in money for "mental pain and suffering" in addition to physical pain and suffering which is the subject of the second paragraph of the instruction. The third paragraph reads as follows:

"The law allows one injured through the negligence of another compensation in money for mental pain and suffering as well as for physical pain and suffering. Mental suffering may arise out of the physical injury, and depends upon the extent, character and probable duration of the injury. It includes all of the various forms that mental suffering may take which will vary in each case with the temperament of the individual, his ability to stand shock, the nature and character of his injuries, and the mental

worry, distress, grief or mortification which may be sustained by him thereby. If one be handicapped by physical injuries from performing the tasks incident to his station in life, or if the character of the injuries be such as to cause mental anxiety or fear of physical suffering reasonably certain to continue in the future, you may consider such elements in assessing damages for mental suffering. In estimating such mental suffering, if you find such exists, you may also consider whether or not plaintiff suffered mentally because plaintiff was deprived by injuries of the pleasures and satisfactions of life enjoyed by those of the same age of sound bodies."

The last paragraph relates to both physical and mental pain and suffering. It states:

"The law has not furnished us with any fixed standards by which to measure pain, suffering or disability. With reference to these matters you must be governed by your own judgment, by the evidence in the case, and by the law as I have given it to you."

Our cases sustain the rule that where, as in this case, there is no evidence as to mental pain and suffering other than the pain and suffering naturally incident to a physical injury like the one complained of, it is improper to instruct upon that element, because it can only lead the jury into the realm of speculation. *Bennett v. Oregon-Washington R. & Nav. Co.,* 83 Wash. 64, 145 Pac. 62 (1914), and cases cited therein; *Nelson v. Fairfield,* 40 Wn. (2d) 496, 244 P. (2d) 244 (1952).

In my opinion, instruction No. 24 goes beyond both the allegations of the amended complaint and the evidence. The amended complaint did not allege any specific items of mental suffering. There was no testimony as to respondent's inability to stand shock, or that she suffered mental worry, distress, grief, mortification, or mental anxiety in addition to her physical pain and suffering (which is fully described in the majority opinion).

In short, the instruction permitted the jury to speculate and infer from the testimony regarding respondent's physical pain and suffering that the items of damage set out in the third paragraph of the instruction relating to mental pain and suffering did, in fact, occur.

In my view, the instruction was not only erroneous (as held by the majority) but constituted prejudicial error. I am unable to say that the inclusion therein of the items of damage relating to mental pain and suffering did not materially affect the amount of the jury's verdict.

I would remand the case for a new trial on the issue of damages only.

WEAVER, C. J., and HILL, J. concur with DONWORTH, J.

