[No. 35102. Department One. February 18, 1960.]

KATHERINE LUCILLE KINNEY, *Respondent,* v. M. LAWRENCE BISSELL *et al., Appellants.*[1]

[1] Reported in 349 P. (2d) 599.

*Rode, Cook, Watkins & Orth* and *Hoyt M. Wilbanks, Jr.,* for appellants.

*Greive & Law, R. R. Bob Greive* and *Roderick D. Dimoff,* for respondent.

MALLERY, J.—The plaintiff brought this action for personal injuries sustained in an automobile rear-end collision. The case was tried to a jury which returned a verdict of five thousand dollars for the plaintiff. The defendants appeal.

At about ten o'clock a. m., on August 31, 1956, the respondent was driving north on Vashon Island on her way to the Seattle ferry, which was scheduled to leave at 10:45 a. m. Appellant driver was following the respondent and was also en route to the ferry, which was only three miles away.

At the point of the collision, the highway was two-lane concrete, sixteen feet wide, dry, straight, and level, and the speed limit was fifty miles an hour. There were shoulders on both sides of the highway of sufficient width to park an automobile entirely off the paved surface of the road. At the time of the collision there was no other traffic in sight, nor were there any pedestrians or animals on or near the roadway. Both cars stopped upon the impact. The respondent then drove her car onto the shoulder of the highway and parked it.

The only independent witness to the accident was mowing his lawn on the east side of the highway a few yards south of the point of impact. He testified that he heard tires squealing, looked up and saw respondent's automobile stopped on the highway with appellants' automobile about twenty feet behind it. He observed appellants' automobile skid forward and collide with the rear of respondent's automobile.

A deputy sheriff arrived on the scene a few minutes after the collision and observed appellants' automobile stopped and disabled in the center of the northbound lane of travel with damage to the front end. He measured sixty feet of

black skid marks from the point of impact south and another twenty feet of "clean" marks extending south from the south end of the black skid marks. He described the "clean" marks as stripes on the pavement which had been wiped clean by the braking action of appellants' tires.

Respondent's version of the collision was that she had gradually decelerated to about twenty miles an hour and was unaware of any vehicle behind her when her automobile was struck in the rear by appellants' automobile.

Appellant driver's version was that he was driving at about forty-five miles an hour and had gradually overtaken respondent's automobile. He had decided to follow it to the ferry dock without passing it and had, accordingly decelerated to about forty miles an hour. He had followed respondent at this speed for a short distance when he became aware that she too was decelerating. He applied his brakes and almost immediately realized that she was slowing down very rapidly and, in fact, was stopping. Whereupon, he locked his brakes. There was insufficient room to stop, and he skidded into the rear of respondent's stopped automobile.

■ The instructions of the trial court and the legal theories of the parties would undoubtedly have been different if the trial had occurred after the decision in the recent case of *Larson v. Stadelman Fruit, Inc.,* 53 Wn. (2d) 135, 332 P. (2d) 52, wherein we held that RCW 46.48.290 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-110] is

" . . . a *parking* statute, not a rule of the road governing the *operation* of motor vehicles. The appellant driver's conduct herein was concerned exclusively with the driving of his car. He did not park or intend to park. The parking statute, therefore, has no application to him or his conduct on the occasion in question."

That case is adverse to appellants' assignments of error Nos. 2, 3, and 4, which are based upon the refusal of the trial court to give appellants' requested instructions to the effect that respondent could not recover if there was room to have stopped off the main traveled portion of the highway at the place of the collision.

Under our interpretation in the *Larson* case of RCW 46.48.290, *supra,* the trial court should not have given instruction No. 10, which reads:

"If you find that at the time of the collision plaintiff intentionally stopped her automobile on the main traveled portion of a public highway, and that at that time and at that place, or in the immediate vicinity of that place, there was room for plaintiff's car to have been stopped off the main traveled portion of the highway, then plaintiff was guilty of negligence. On the other hand, plaintiff would not be guilty of negligence if her car stopped due to some cause beyond her control and if she, acting as a reasonably prudent person, was unable to get her car off the main traveled portion of the highway."

Notwithstanding its inapplicability to the facts in this case, the instruction was favorable to the appellants and prejudicial only to the respondent, who is not complaining about it.

■ The trial court instructed the jury that

". . . The signal for a stop or a sudden decrease of speed may be made by extending the arm from the left side of the vehicle with the forearm lowered vertically, *or the signal may be given by a signal lamp or signal device.*" (Italics ours.)

The appellants contend that the giving of the italicized portion of the instruction was error.

The pertinent part of RCW 46.60.120 provides:

"(1) Any stop or turn signal when herein required shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device except as otherwise provided in subsection (2); . . ."

Subsection (2) relates only to vehicles with wide bodies. The instruction correctly interprets the statute.

■ The trial court instructed the jury on last clear chance as follows:

"If you find the plaintiff was guilty of negligence which continued up to the time of the accident, but that the defendant actually saw the plaintiff in a position of peril and thereafter had time and opportunity to avoid the accident by the exercise of reasonable care, but failed to do so, then, under the doctrine of last clear chance, notwithstand-

ing the negligence of the plaintiff, your verdict must be for the plaintiff."

This is one of King county's uniform stock instructions.

Appellants contend that the doctrine of last clear chance does not apply to this case because their skid marks for eighty feet precludes the existence of a clear chance to avoid the accident. We could agree if the record conclusively established the occurrence of a sudden emergency when appellant driver was eighty feet away or if it appeared that he had no opportunity to be aware of respondent's peril any sooner. The record, however, shows by his own testimony that the appellant driver had followed the respondent for a short distance and had already decided not to pass and to follow her to the ferry landing, when he realized that she was decelerating. The jury could have found the existence of a clear chance to avoid the collision under all the circumstances surrounding the accident.

■ The appellants contend the instruction given was inadequate because it did not require proof that the appellant driver realized respondent's peril.

We find no merit in the theory that a plaintiff must prove the state of mind of a defendant regarding his perception of peril. If a defendant looked and actually saw a plaintiff's position of peril, the law would then require him to understand what he had seen.

The judgment is affirmed.

WEAVER, C. J., DONWORTH, ROSELLINI, and HUNTER, JJ., concur.

---

April 1, 1960. Petition for rehearing denied.