[No. 36430.   Department One.   May 16, 1963.]

DONALD P. DANLEY *et al., Appellants,* v. PRESTON A. COOPER *et al., Respondents.**

* Reported in 381 P. (2d) 747.

*Colvin & Williams* (*John J. Keough,* of counsel), for appellants.

*Brethorst, Fowler, Bateman, Reed & McClure* and *Roy J. Moceri,* for respondents.

HILL, J.—This is a rear-end collision case. The negligence of the defendants,[1] whose panel truck ran into the rear of the plaintiffs'[2] car, is conceded. The trial court held that on the agreed facts the plaintiff was, as a matter of law, contributorily negligent; and that, as a matter of law, the last clear chance doctrine did not apply, and entered a summary judgment of dismissal.

From this judgment, the plaintiff appeals, urging that the issues of her negligence, of proximate cause, and of last clear chance presented questions of fact for a jury.

The case comes before us on an agreed statement of facts and a record that might well be a model for the purposes of holding down the costs on appeal, pinpointing the issues, and excising the irrelevant.

It is agreed that the collision occurred on a four-lane highway, which was divided down the center by two yellow stripes more than 4 inches apart. It is concededly unlawful to cross such barrier stripes.[3] The plaintiff stopped her car in the inside-eastbound lane for the purpose of making a left-hand turn across the barrier stripes and the westbound lanes to her husband's service station, rather than proceed-

---

[1] The defendants named in the caption owned the panel truck which was being driven by an employee, who was at that time performing duties for the defendants.

[2] The action was commenced by Donald P. Danley and Lerone Danley, his wife. The latter was driving their car and sustained the injuries for which recovery is sought; she will be referred to as if she was the sole plaintiff.

[3] "Divided highways. Whenever any highway has been divided into two roadways for travel in opposite directions by leaving an intervening space or by a physical barrier or clearly indicated dividing section or by two parallel barrier stripes four inches or more apart so installed as to control vehicular traffic, every vehicle shall be driven only upon the right hand roadway and no vehicle shall be driven over, across or within any such dividing space, barrier or section, or barrier stripes, except through an opening in such physical barrier or dividing section or space, or barrier stripes, or at a crossover or intersection established by public authority." RCW 46.60.020.

ing a quarter mile further east to the nearest intersection where she could legally make a U turn and then return in a westbound traffic lane to the service station. At the time she stopped, there was nothing behind her and she had an unobstructed view to the rear for 800 feet. She remained in a stationary position for "quite a while" to permit a westbound funeral procession to pass on the other side of the barrier stripes. While so stopped, the defendants' panel truck crashed into her car. The defendants' driver admitted that he had been watching the funeral procession and not the road.

The plaintiff's contentions on the issues of her negligence and proximate cause are answered by our opinion in *Guerin v. Thompson* (1959), 53 Wn. (2d) 515, 335 P. (2d) 36. There, as in the instant case, the plaintiff had stopped his car in the inside lane preparatory to making an unlawful left turn across double-center-barrier lines and, while so stopped, was struck in the rear by defendant's vehicle. In that opinion we said:

"  .   .   .   the legislature has defined the standard of care which one must exercise in operating a motor vehicle upon divided four-lane arterial highways by RCW 46.48.290[4] and 46.60.020 [see note 3], and other statutory provisions[5]

---

[4] "Leaving vehicle on main traveled part of highway. It shall be unlawful for any person to stop, park or leave standing any vehicle, whether attended or unattended, upon the paved, improved or main traveled portion of any public highway outside incorporated cities and towns when it is possible to stop, park, or so leave such vehicle off such paved, improved or main traveled portion of such public highway. In the event that it is not possible to leave such vehicle standing off the paved, improved or main traveled portion of such public highway at least one half of the width of such roadway shall be left clear and unobstructed for the free passage of other vehicles and a clear view of such stopped vehicle shall be available for a distance of three hundred feet in each direction upon such public highway: *Provided,* That this section shall not apply to the operator of any vehicle which is disabled upon the paved or improved or main traveled portion of any public highway in such a manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." RCW 46.48.290.

[5] After the publication of the *Guerin* opinion, a state patrol officer asked the question as to whether, under the facts in that case, "other statutory provisions" which would be applicable included the laws against gambling. The question seems pertinent.

not here applicable. See *Green v. Floe*, 28 Wn. (2d) 620, 183 P. (2d) 771 (1947); *Swanson v. Gilpin*, 25 Wn. (2d) 147, 169 P. (2d) 356 (1946)." *Id.* at 520, 335 P. (2d) at 39.

Plaintiff argues that RCW 46.48.290 does not prohibit stopping on the highway, but is a parking statute and cites *Kinney v. Bissell* (1960), 55 Wn. (2d) 660, 349 P. (2d) 599; *Clevenger v. Fonseca* (1959), 55 Wn. (2d) 25, 345 P. (2d) 1098; *Larson v. Stadelman Fruit, Inc.* (1958), 53 Wn. (2d) 135, 332 P. (2d) 52. The rationale of those cases is inconsistent with our holding in *Guerin*; and, although the results can be readily justified, we now feel that our interpretation of the statute in those cases was erroneous.

■ A statute, if possible, should be construed to give effect to all the language used;[6] and it should be assumed that when the legislature said it was unlawful "to stop, park or leave standing any vehicle," under the conditions declared to be unlawful by RCW 46.48.290 (see note 4), it meant by the inclusion of the word "stop" something in addition to "park" or "leave standing" and was not merely repeating itself for emphasis. See *Northern Indiana Transit, v. Burk*, 228 Ind. 162, 170, 89 N. E. (2d) 905, 908, 17 A. L. R. (2d) 572:

". . . Under appellant's contention the term 'stop' would be mere surplusage in the act. Moreover, the dangers to the traveling public from stopping in an unreasonable manner may be just as serious as stopping a sufficient length of time to become parking."

Moreover the legislative history of the statute supports this assumption. The original wording "leave any vehicle standing,"[7] was changed to "park or leave standing,"[8] and still later changed to "stop, park or leave standing."[9]

---

[6] *State v. Lundquist* (1962), 60 Wn. (2d) 397, 403, 374 P. (2d) 246, 249; *Seattle Medical Center, Inc. v. Cameo Corp.* (1959), 54 Wn. (2d) 188, 191, 339 P. (2d) 93, 96; *Public Hospital Dist. No. 2 of Okanogan Cy. v. Taxpayers of Public Hospital Dist. No. 2 of Okanogan Cy.* (1954), 44 Wn. (2d) 623, 625, 269 P. (2d) 594, 595; *Group Health Co-op. of Puget Sound v. King Cy. Medical Soc.* (1951), 39 Wn. (2d) 586, 637, 237 P. (2d) 737, 764; 2 Sutherland, Statutory Construction (3d ed. 1943) § 4705.

[7] Laws of 1921, chapter 96, § 35.

[8] Laws of 1927, chapter 309, § 47.

[9] Laws of 1937, chapter 189, § 110.

We find what we now regard to be a proper interpretation of the statute in 2A Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed. 1951) § 1197, at 39:

"Under the usual statute against parking, stopping, or leaving standing, the prohibition includes a temporary halt, unless the stop is justified. Such an act may not involve 'parking' but it is 'stopping' or 'leaving standing.' The fundamental problem is one of justification. . . ."

This is not to say, of course, that all momentary stops are prohibited by the statute. For example, stops clearly required by the exigencies of traffic[10] permitted by statute,[11] or made out of reasonable necessity because it would be hazardous to proceed on the intended course, are not within the purview of such a statute. See 43 Iowa L. Rev. 401 (1958).

Applying this rule to the *Larson* and *Clevenger* cases, it is apparent that the stops in question were justified and, hence, not contributorily negligent. In *Larson,* the plaintiff,

---

[10] See *Lindsley v. Webb* (1955), 46 Wn. (2d) 189, 279 P. (2d) 639 (stopped on highway for what appeared to be an automobile accident ahead); *General Ins. Co. of America v. Lewis* (1952), 121 Utah 440, 243 P. (2d) 433 (stopped on highway due to congested traffic); *Doss v. Rader* (1948), 187 Va. 231, 46 S. E. (2d) 434; *McCoy v. Fleming* (1941), 153 Kan. 780, 113 P. (2d) 1074 (road conditions caused a stoppage in the flow of traffic; statute denounced voluntary, not compelled stops); *Roddy v. American Smelting & Refining Co.* (1939), 34 Cal. App. (2d) 457, 93 P. (2d) 841 (stopped on bridge at command of traffic flagman); *Fontaine v. Charas* (1935), 87 N. H. 424, 181 Atl. 417 (legislature intended to make illegal any voluntary stopping on the highway for any length of time, except such stops as the exigencies of traffic require). An example of a stop required by statute is found in RCW 46.48.140, which directs motorists to stop on approaching a stopped school bus.

[11] Such permission is implicit in the terms: "when it is possible to stop, park, or so leave such vehicle off such paved, improved or main traveled portion of such public highway," which appear in RCW 46.48-.290. See *Grubbs v. Grayson* (1931), 165 Wash. 548, 5 P. (2d) 1033 (statute not violated where unsafe to move auto onto gravel shoulder which was soft and wet). Moreover, the statute does not apply to:

". . . the operator of any vehicle which is disabled upon the paved or improved or main traveled portion of any public highway in such a manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." RCW 46.48.290.

who was rear-ended, had stopped because of the possibility of children coming around the rear end of a school bus which was headed in his direction and standing still. In *Clevenger*, the plaintiff, who was rear-ended, had stopped behind a school bus which was stopped partially off the road to discharge several school children.

In *Kinney*, if there was a stop it was without justification, but the plaintiff whose vehicle was struck from behind, contended that she had not stopped but had gradually decelerated to about 20 miles an hour. The jury obviously accepted her version, so that any discussion of the meaning of the statute was dictum under the circumstances.

■ Applying the rule we have just approved to the present case, it was negligence per se for the plaintiff to stop her car on the highway unless there was justification therefor. It is conceded that she stopped because she intended to make an illegal left turn across the center-barrier stripes. The plaintiff's counsel point out that she had not violated RCW 46.60.020 because she had not even started to cross the barrier stripes when her car was hit; and one cannot be negligent for merely intending to violate a statute. This we grant; but stopping for the purpose of violating a statute completely fails to supply an adequate justification for the stopping.

Nor is there any justification for stopping by the fact that other people violate the statute at that particular place, or that it is more convenient to violate the statute than to continue for a quarter of a mile to a place where a lawful left turn can be made.

■ Justification is here no matter for a jury; reasonable minds can find, at best, nothing more than the assumption of a calculated risk. The violation of the statute constitutes negligence per se; and the issue of proximate cause (whether that negligence became contributory negligence) was decided adversely to the plaintiff in *Guerin v. Thompson, supra*.

There remains for consideration the plaintiff's contention

that the second phase of the doctrine of last clear chance[12] is applicable. There is no evidence that defendants' driver actually saw the plaintiff's car in time to avoid the collision, and it is not contended that the first phase of the doctrine applies. Since defendants admit that their driver should have seen the plaintiff in time to avoid the accident, the only question is whether plaintiff's negligence had terminated or culminated in a situation of peril from which she could not, by the exercise of reasonable care, extricate herself.

■ Plaintiff was negligent per se in voluntarily stopping her car on a multi-lane highway in violation of RCW 46.48-.290. Such negligence continued from the time she brought her vehicle to a stop until the collision and did not terminate. Likewise, she was not in a position of peril from which she could not extricate herself. Plaintiff did not see defendants' truck until she heard her son scream and saw it coming toward her in the rearview mirror "too close to do anything about it." Had she not been oblivious to the danger created by the approach of defendants' vehicle until an instant before the impact, she could have extricated herself from her position of peril by driving down the highway or getting out of the way of the approaching vehicle.

We have consistently rejected the contention that one who is oblivious to his danger is, in effect, as unable to extricate himself as one who is physically unable to do so. In

---

[12] The doctrine, as we have frequently stated it, is:

". . . (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury; but (2) that where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality *should have seen* the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself." *Leftridge v. Seattle* (1924), 130 Wash. 541, 545, 228 Pac. 302.

such a situation the plaintiff has an opportunity equal to that of the defendant to avoid the accident. See *Conklin v. Seattle* (1961), 58 Wn. (2d) 189, 192, 361 P. (2d) 578, 580; *Everest v. Riecken* (1948), 30 Wn. (2d) 683, 193 P. (2d) 353; *Thompson v. Porter* (1944), 21 Wn. (2d) 449, 459, 151 P. (2d) 433, 438.

In *Thompson v. Titus Motor Co.* (1962) 60 Wn. (2d) 372, 374 P. (2d) 177, we referred to a statement from one of the late texts dealing with last clear chance. The statement is equally applicable here:

" . . . If an inattentive defendant negligently fails to see an inattentive (but not helpless) plaintiff, the case falls into the category where both plaintiff and defendant are negligently unaware of an impending peril; the plaintiff could have saved himself as long as defendant could have saved him. Under such circumstances, most American courts and the American Law Institute rule out last clear chance. 2 Harper and James, Law of Torts § 22.13, p. 1252."

The trial court properly concluded, as a matter of law, that last clear chance had no application in this case.

The summary judgment of dismissal is affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

---

September 12, 1963. Petition for rehearing denied.