[No. 23953-8-I.    Division One.    July 29, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL LYNN JACKSON, *Appellant.*

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Arthur R. Chapman, Deputy,* for respondent.

AGID, J. — Michael Jackson appeals a judgment and exceptional sentence for attempted second degree rape. He contends that the evidence is insufficient to support the verdict, he was prejudiced by constitutional instructional error, and the trial court improperly relied on a future dangerousness rationale as a basis for imposing an exceptional sentence. We reverse and remand for a new trial.

Sometime in November 1988, Jackson became acquainted with Susan K. They discussed employment options, and Jackson told Susan that he would try to help her find a job at one of his two employers. For the next few days, Jackson visited Susan's apartment frequently, ostensibly to further his efforts to help her find employment. On one of these occasions, Susan complied with a request by Jackson that she remove all of her clothing so

that Jackson could measure her for a uniform. In the course of taking her measurements, Jackson touched Susan's vagina. Susan then put her clothes back on. Jackson, who was fully clothed, pulled her down on a bed, lay on top of her, and moved around as if he were having sexual intercourse. Susan asked Jackson to get up; Jackson eventually did as she asked.

Several days later, on the evening of December 1, 1988, Jackson returned to Susan's apartment, where he found her 14-year-old daughter, "Z", home alone. Z told Jackson that her mother was not there, and asked whether he would like to leave a message. Jackson came inside to write a note. While inside, Jackson asked Z to find out what size clothes her mother wore. Z went into the bedroom to get this information. As she started to walk out of the bedroom, she saw Jackson walking toward her. Z backed into the bedroom; Jackson followed. When Jackson was within 2 feet of Z, he told her to lift up her skirt or he would kill her. Z said "No", and continued to back up. When she had backed up as far as she could, Z screamed. Jackson said he "was just joking". Z then told Jackson to get out and Jackson left.

When Susan returned home Z told her what had happened. Susan called the police. Jackson was charged with committing attempted second degree rape by having attempted, by forcible compulsion, to engage in sexual intercourse with Z. A jury found him guilty as charged. At the sentencing hearing, the trial court found that Jackson had committed this offense within 1 month of his release from prison on a first degree rape conviction and concluded that Jackson was a danger to the community. Based on this, the court imposed a 45-month exceptional sentence. The standard range for Jackson's offense was 30.75 to 40.5 months.

### SUFFICIENCY OF EVIDENCE

■ To prove an attempted rape, the State must establish that the defendant took a substantial step toward commission of the crime, with the intent to have sexual intercourse. RCW 9A.44.050; RCW 9A.28.020; *State v. Workman*, 90 Wn.2d 443, 449, 584 P.2d 382 (1978); *State*

*v. Stewart*, 35 Wn. App. 552, 555, 667 P.2d 1139 (1983). Conduct is not a substantial step " 'unless it is strongly corroborative of the actor's criminal purpose.' " *Workman*, 90 Wn.2d at 451 (quoting Model Penal Code § 5.01(2) (Proposed Official Draft 1962)). Mere preparation to commit a crime will not support an attempt conviction. *Workman*, 90 Wn.2d at 449.

Jackson contends that even when viewed most favorably toward the State, the evidence is insufficient to support his conviction. He argues that his acts as testified to by Z were at most preparation to commit the crime charged. In support of this argument, Jackson relies on *State v. Meyer*, 37 Wn.2d 759, 771, 226 P.2d 204 (1951). In *Meyer*, the court set aside an attempted rape conviction on insufficient evidence grounds. The defendant's efforts to have intercourse with the intended victim had failed because on one occasion police officers approached, and on another he was unable to achieve an erection. 37 Wn.2d at 771. In deciding this evidence was insufficient, the court interpreted a statute defining an attempt as "[a]n act done with intent to commit a crime, and tending but failing to accomplish it," as requiring an "overt act done towards the penetration of the female organs". 37 Wn.2d at 771. Defendant's acts, the court concluded, did not meet this standard and instead were mere preparation. 37 Wn.2d at 771.

For two reasons, Jackson's reliance on *Meyer* is misplaced. First, the statutory definition of attempt involved in *Meyer* has been amended so as to only require defendant to do an "act which is a substantial step toward the commission of [the specific] crime." RCW 9A.28-.020(1). This definition, which is the same as that employed by the Model Penal Code, normally "will broaden the scope of attempt liability." Model Penal Code § 5.01 comment 6(a), at 329 (1985); *see also Workman*, 90 Wn.2d at 451-52 (adopting Model Penal Code approach to defining "substantial step"). We therefore question whether, under the substantial step requirement, an overt act toward penetration is still necessary to prove attempted rape. Second, even if proof of an overt act is still required,

it is no longer so strictly interpreted as it was in *Meyer.* Thus, in *State v. Ray,* 63 Wn.2d 224, 226, 386 P.2d 423 (1963), the court found defendant's physical assault upon the victim, coupled with an avowed purpose to have sexual relations with her, satisfied the overt act component of an attempted rape.

Despite *Meyer*'s inapplicability, Jackson's insufficient evidence argument is not without some merit. When compared with the facts of other reported cases, the evidence of attempted rape in this case is slim. For example, in *State v. Gatalski,* 40 Wn. App. 601, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985), defendant physically forced the victim into a bedroom and onto the bed. There, he lay on top of the victim, tried to force his hand under her clothing, and attempted to kiss her. On appeal, the court found this evidence sufficient to sustain defendant's conviction for attempted rape in the second degree. In *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976), the court upheld a murder and attempted rape conviction when the victim was found in the woods partly nude and lying on her back with her legs spread apart, and defendant had bloodstains on his undershorts, dirt on his genitals, and his pants were unzipped. Finally, in *Ray,* 63 Wn.2d at 225-26, the court found sufficient to support an attempted rape conviction evidence that the defendant grabbed the victim, forced her outside, threw her to the ground, "grappled" with her, tried to unzip his trousers, and told the victim he was going to have intercourse with her. In contrast, here defendant did not touch Z and never expressly stated that he intended to have intercourse with her.

Although these factual differences are striking, they are not a basis for reversing Jackson's conviction on an insufficiency of the evidence ground. Evidence is sufficient to support a verdict when, viewing the evidence most favorably to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Here, the essential elements at issue are intent to have sexual intercourse and the taking of a sub-

stantial step toward having intercourse.[1] The evidence relevant to both Jackson's intent and his taking of a substantial step is that Jackson convinced Z to go into the bedroom, followed her into that room, and then approached her and ordered her to lift her skirt. From this evidence, a jury could reasonably have found beyond a reasonable doubt that Jackson intended to have sexual intercourse with Z,[2] and that he took a substantial step toward that goal.

█ Our conclusion that the evidence is sufficient for a jury to reasonably find that Jackson took a substantial step toward raping Z is bolstered by the Model Penal Code's formulation of that element. Our Supreme Court expressly approved that formulation in *Workman*, 90 Wn.2d at 451 n.2, and *State v. Smith*, 115 Wn.2d 775, 782-83, 801 P.2d 975 (1990). Under the Model Penal Code, the following conduct, if strongly corroborative of the actor's criminal purpose, is not insufficient as a matter of law to prove a substantial step: (1) " 'lying in wait, searching for or following the contemplated victim of the crime;' " (2) "enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;" and (3) "unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed". *Workman*, 90 Wn.2d at 451 n.2. (quoting Model Penal Code § 5.01(2)). Jackson's acts of having Z enter the bedroom under an apparent pretense and following her into that room fit within these definitions.

---

[1] The sufficiency of evidence to support the forcible compulsion aspect of the charge against Jackson is not at issue.

[2] During closing argument, Jackson asserted that the evidence concerning his sexual encounter with Susan demonstrated his lack of intent to have sexual intercourse with Z. He argued: "If there was an intent to rape there was certainly greater opportunity with Susan than there ever was with [Z]." While this argument lends support to Jackson's claim, addressed *infra*, that he was prejudiced by constitutional instructional error, use of this type of evidentiary inference against the State is not permitted in a sufficiency of the evidence analysis. Instead, to determine whether sufficient evidence exists, all reasonable inferences from the evidence must be drawn in the State's favor. *State v. Coleman*, 54 Wn. App. 742, 747, 775 P.2d 986, *review denied*, 113 Wn.2d 1017 (1989).

INSTRUCTIONAL ERROR

■ Jackson next contends, and the State agrees, that it was constitutional error to fail to instruct the jury on the elements of an attempt. The court's to-convict instruction provided in pertinent part:

> To convict the defendant Michael Lynn Jackson of the crime of attempted rape in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 1st day of December, 1988, the defendant attempted to engage in sexual intercourse with [Z];
>
> (2) That the attempted sexual intercourse occurred by forcible compulsion; and
>
> (3) That the acts occurred in King County, Washington.

The court also instructed the jury on the definitions of sexual intercourse, forcible compulsion, substantial step and intent. It did not, however, give an instruction defining attempt and informing the jury that intent and a substantial step are elements of an attempt to commit a crime. This was constitutional error.

> Although it is not necessary to give an instruction defining an element whose meaning is one of common understanding, we cannot say that the average juror knows as a matter of common knowledge that "attempt" contains the two separate elements. The court's failure to set out these elements was an error of constitutional magnitude.

(Citation omitted.) *State v. Stewart*, 35 Wn. App. 552, 555, 667 P.2d 1139 (1983) (holding constitutionally insufficient a to-convict instruction substantially the same as that given here); *see also* WPIC 100.01 Note on Use (advocating use of instruction defining attempt in terms of intent and substantial step in every case involving an attempt charge); WPIC 100.02 (recommended to-convict instruction for attempt crimes, which incorporates intent and substantial step elements).

■ Despite conceding error, the State argues that reversal is not required. The State contends that the error was harmless because Jackson's lack-of-intent-to-commit-rape defense reinforced in the jury's mind that intent was

an issue it should consider.[3] The State cites no legal support for this argument, and none has been located. To the contrary, the rule is that failure to instruct the jury as to the intent element of a crime can be harmless error only if the defense theory of the case does not involve the element of intent. *State v. Smith*, 56 Wn. App. 909, 914, 786 P.2d 320 (1990); *State v. Tyler*, 47 Wn. App. 648, 653, 736 P.2d 1090 (1987), *overruled on other grounds in State v. Delcambre*, 116 Wn.2d 444, 805 P.2d 233 (1991).

■ Constitutional error is presumed to be prejudicial and requires reversal unless the State convinces the appellate court beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error.[4] *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *State v. Holt*, 56 Wn. App. 99, 105, 783 P.2d 87 (1989), *review denied*, 114 Wn.2d 1022 (1990). Here, one of Jackson's defenses was that his acts toward Z were not premised on an intent to have sexual intercourse, but instead were premised on some other intent, such as committing an assault or taking indecent liberties.[5] As evidence of his lack of intent to have sexual intercourse, Jackson cited the measurement episode with Susan in which he did not engage in intercourse despite the opportunity to do so. The jury could not consider the significance of this defense, however, because it was never

---

[3]At oral argument the State advanced another theory, that the error was harmless because Jackson had asserted a mistaken identity defense, not a lack of intent defense. While Jackson did present an identification defense, the State's assertion is not supported by the record because during closing, Jackson also clearly argued lack of intent to the jury. See footnote 2.

[4]More specifically, constitutional instructional error is harmless only if it is trivial, formal or merely academic, did not prejudice the substantial rights of the party assigning error, and in no way affected the final outcome of the case. *State v. Fowler*, 114 Wn.2d 59, 63, 785 P.2d 808 (1990); *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977).

[5]Indeed, the jury was given a lesser included offense instruction for fourth degree assault. Significantly, an element of this offense is intent. Thus, in the absence of an instruction defining attempt, the jury may well have concluded that the intent definition instruction it received related only to the assault charge and had no relevance to the attempted rape charge.

instructed that it was required to find beyond a reasonable doubt that Jackson intended to have sexual intercourse with Z. Consequently, it is likely that the instructional error affected the outcome of the case and a reversal is required. *See generally Stewart*, 35 Wn. App. at 555-56 (finding constitutional instructional error similar to that at issue here required reversal).

### SENTENCING

The State conceded at oral argument that under *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990) and *State v. Miller*, 60 Wn. App. 914, 808 P.2d 186 (1991), the trial court erred in relying on a future dangerousness rationale to impose Jackson's exceptional sentence. Those cases hold that an exceptional sentence can be imposed on a future dangerousness ground only when there is a history of similar acts and proof of a lack of amenability to treatment.

In light of our disposition, we need not reach the sentencing issue. However, we think that it is at least arguable that the factual finding on which the court based its future dangerous conclusion; *i.e.*, that Jackson committed this offense shortly after his release from prison on another rape conviction, is distinguishable from the findings at issue in *Pryor* and *Miller*.

The judgment and sentence are reversed.

PEKELIS and FORREST, JJ., concur.