
COURT OF APPEALS DIV I
STATE OF WASH.

2017 OCT 30 PM 12: 11

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74944-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| LESLIE GUY WILSON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 30, 2017 |
| | ) | |

MANN, J. — Leslie Wilson appeals his convictions for rape of a child in the first degree and attempted rape of a child in the first degree. The evidence of attempted rape, including the child's statements to an interviewer and the reasonable inferences that can be drawn from those statements, is sufficient to sustain the conviction. Nevertheless, because the jury was not properly instructed on the elements of attempt, and the trial court abused its discretion in admitting evidence of prior sexual misconduct, we reverse both convictions and remand.

## FACTS

Claudine Wilson has cared for her granddaughter, B.E., since she was born on January 29, 2006. In 2010, when B.E. was four years old, Claudine married Leslie

Wilson.[1] Wilson moved into Claudine's home in Auburn, Washington which Claudine shared with several other family members. Claudine, Wilson, and B.E. shared a bedroom. Claudine and Wilson slept in a king size bed. B.E. had her own bed in the same room, but sometimes slept with Claudine and Wilson.

Claudine has limited physical mobility due to a back injury and early in the marriage, Wilson often assisted Claudine with household chores and taking care of B.E. In the mornings, Wilson sometimes let Claudine sleep in and got up to help B.E. get ready for school. Wilson and B.E. appeared to get along well. The marriage eventually deteriorated, however, in part due to Wilson's alcohol use.

Wilson left the household in July 2012. About five months later, in December 2012, just after Claudine spoke to Wilson on the telephone, B.E. told Claudine that Wilson had touched her.

Claudine reported B.E.'s disclosure to Child Protective Services (CPS) several weeks later. Following that report, a CPS social worker came to Claudine's home and attempted to speak to B.E. about the abuse allegation in order to assess her safety. B.E. was extremely reluctant to discuss the matter but eventually said that Wilson touched her in her vaginal area, which she indicated by pointing.

Carolyn Webster, a child interview specialist, then interviewed B.E. The interview was recorded. B.E., who was six years old at the time, again expressed reluctance to talk about what happened with Wilson, but admitted that "Papa had sex

---

[1] Because Claudine and Leslie Wilson have the same last name, for clarity we refer to Claudine by her first name.

with [her]."[2] She said it happened "[m]ore than one time." B.E. said that Wilson was "really drunk" and she was still in preschool. According to B.E., she and Wilson were waiting for the school bus and were the only people awake in the house. B.E. told Webster that Wilson pulled down her pants and his pants and he touched her "spot" with his "spot." B.E. described being in the living room on her back on the sofa while Wilson's body went up and down. She said it hurt her spot. When the bus came, Wilson got a paper towel to wipe her. B.E. said that Wilson needed to wipe her spot because he "used a thick lotion on his spot."

B.E. also said that Wilson touched her spot with his finger, that his finger went "deep down into [her] spot," and it hurt. Wilson told her she could not tell anyone about what happened.

B.E. also described a separate incident that took place in Nana's bedroom, which was also her bedroom. Webster asked B.E. if Wilson wanted her to "do something to his spot," and B.E. replied that Wilson wanted her to "suck on it." B.E. said Wilson told her to "suck on it like a sucker." When B.E. said no, Wilson said to "go ahead." After B.E. still refused, Wilson said "okay."

Two health care providers examined B.E. shortly after she disclosed the abuse to her grandmother. Dr. Sandra Ritland, a primary care physician, examined B.E. in January 2013. Dr. Ritland performed a vaginal exam. She noticed an "abrasion" on each side of the vagina that had the appearance of a "rug burn or a scrape." Dr. Ritland referred B.E. to a hospital for a sexual assault examination.

---

[2] During her interview, B.E. referred to Claudine as "Nana" and Wilson as "Papa."

Pediatric nurse practitioner at Mary Bridge Hospital, Michelle Breland, performed the sexual assault examination. Before the exam, Breland asked B.E. if she had any "owies" on her body and B.E. said only on her "spot," pointing to her genital area. B.E. refused to provide details, but when Breland asked if someone "did something" to her "spot," she responded, "Papa." Breland said that B.E.'s exam was "essentially normal," which she explained did not mean that sexual assault did not occur because hymenal tissue heals quickly. B.E. also tested negative for several sexually transmitted diseases, including chlamydia, gonorrhea, and syphilis.

The State charged Wilson with two counts of rape of a child in the first degree and one count of attempted rape of a child in the first degree.

Claudine testified at trial that B.E. suffered from various "vaginal issues" between 2010 and 2013. In particular, Claudine said B.E. had rashes, urinary tract infections, and at one point, a blister in her vaginal area. Claudine also said that several months after he left the household, Wilson reported that he had sores in his genital area.

Dr. Ritland confirmed that she treated B.E. several times for urinary symptoms and vaginal rashes shortly before and after the December 2012 disclosure. Dr. Ritland testified that she was "concerned" about possible sexual abuse because of B.E.'s frequent and persistent urinary and vaginal symptoms. Dr. Ritland also testified that B.E. had gained a substantial amount of weight in the three years following the disclosure of abuse and said that B.E.'s obesity raised a "red flag" because of a correlation between sexual abuse and obesity.

B.E. was nine years old at the time of trial. She could not remember any of her previous statements or medical examinations. She remembered only telling her grandmother something that made her grandmother cry. B.E. eventually admitted that Wilson did something to her "spot" that she did not like, but she could not describe what it was. The jury convicted Wilson of one count of rape of a child and attempted rape of a child, and acquitted him on the second count of rape of a child. Wilson appeals.

## ANALYSIS

### Instructional Error

Wilson argues that the trial court erred in failing to instruct the jury on the definition and elements of attempt. Failure to instruct the jury on every element of the crime charged is constitutional error. State v. Aumick, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995). We review challenged jury instructions de novo. State v. Mills, 154 Wn.2d 1, 7, 109 P.3d 415 (2005).

Attempt consists of two elements: (1) intent and (2) a substantial step. RCW 9A.28.020(1). In this case, however, the jury instructions did not define attempt nor inform the jury of these elements of an attempted crime. There was a jury instruction defining "substantial step," but no instruction connected that concept to the offense of attempted rape of a child.

Due process requires that the jury must be informed of all elements of an offense and instructed that each element must be established by proof beyond a reasonable doubt. State v. Scott, 110 Wn.2d 682, 690, 757 P.2d 492 (1988). The failure to instruct the jury that intent is an element of attempted rape is an error of

constitutional magnitude. Aumick, 126 Wn.2d at 430; see also State v. Jackson, 62 Wn. App. 53, 59, 813 P.2d 156 (1991). As we held in State v. Stewart:

> Although it is not necessary to give an instruction defining an element whose meaning is one of common understanding, we cannot say that the average juror knows as a matter of common knowledge that 'attempt' contains the two separate elements. The court's failure to set out these elements was an error of constitutional magnitude.

35 Wn. App. 552, 555, 667 P.2d 1139 (1983) (citation omitted).

Accordingly, the State concedes, and we agree, that the instructional error requires reversal of Wilson's attempted rape conviction.

### ER 404(b) Evidence

Wilson contends that the trial court erred in admitting a dissimilar and unfairly prejudicial prior act of sexual misconduct as a purported common scheme or plan under ER 404(b). We agree.

This court reviews a decision to admit evidence under ER 404(b) for abuse of discretion. State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "In doubtful cases, the evidence should be excluded." Thang, 145 Wn.2d at 642.

Before trial, the State informed the trial court of its intent to present evidence of a sexual remark Wilson allegedly made to B.E.'s older cousin, S.H. Specifically, S.H. claimed that when she was 11 or 12 years old and wearing a bathing suit, Wilson remarked that she should not "wear that stuff around [him] because it gets—[him] so excited." The State argued that this evidence showed that Wilson had a common scheme or plan to sexually assault young girls. The defense argued that the evidence showed only propensity and was inadmissible. The court ruled that S.H.'s testimony demonstrated a common scheme or plan and was admissible under ER 404(b).

ER 404(b) prohibits the use of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. The same evidence may be admissible for other purposes, however, depending on its relevance and the balancing of the probative value and danger of unfair prejudice. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). One accepted "other purpose" under ER 404(b) is to show the existence of a common scheme or plan. Gresham, 173 Wn.3d at 421-22. "[E]vidence that a charged crime was carried out in a manner devised by the defendant and used by him more than once has a distinct and additional probative value [other than showing propensity] that justifies its admission." State v. Slocum, 183 Wn. App. 438, 456, 333 P.3d 541 (2014).

The prior misconduct and the charged crime must share a sufficient number of "markedly and substantially similar" features so that the similarities can naturally be explained as individual manifestations of a general plan. Gresham, 173 Wn.2d at 422. The prior misconduct must be sufficiently similar to the charged crime, or else the evidence of misconduct is not probative of whether the alleged act occurred. See State v. DeVincentis, 150 Wn.2d 11, 20, 74 P.3d 119 (2003). Similarity of results is insufficient and the evidence must show more than a general "plan" to molest children. Gresham, 173 Wn.2d at 422; Slocum, 183 Wn. App. at 453.

The incidents described by B.E. and S.H. did not share "markedly and substantially similar" features that can naturally be explained as individual manifestations of a general plan. B.E. reported recurring incidents of sexual abuse. S.H. reported an isolated, sexually-oriented remark. There was a significant difference in the victims' ages when the incidents occurred. The evidence was

similar only in the respect that it tended to show Wilson's sexual attraction to minors. S.H.'s testimony did not demonstrate the existence of a common scheme or plan. In view of the limited evidence presented to the jury, we cannot say that the admission of the ER 404(b) evidence did not materially affect the trial within reasonable probabilities. See Gresham, 173 Wn.2d at 433, 269 P.3d 207 (under the applicable nonconstitutional harmless error test, the question is whether within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred).

The State concedes that Wilson's conviction of rape of a child must be reversed because the trial court erroneously admitted prejudicial evidence under ER 404(b). We accept the State's concession and reverse Wilson's conviction of rape of a child.

*Sufficiency of the Evidence*

Wilson also contends that insufficient evidence supports his conviction of attempted rape of a child, and accordingly, the double jeopardy clause prohibits his retrial on the charge. See State v. Wright, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009).

Due process requires the State to prove beyond a reasonable doubt every element of a crime. State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015). A challenge to the sufficiency of the evidence admits the truth of the evidence presented at trial, which we view in the light most favorable to the prosecution. State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). We will reverse a conviction on this ground only if we find that no

rational trier of fact could have found the person guilty beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980).

In analyzing a claim of insufficiency, we draw no distinction between circumstantial and direct evidence because both are considered equally reliable. State v. Bencivenga, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). The credibility of the witnesses and the weight to be given to the evidence are matters for the finder of fact. Bender v. City of Seattle, 99 Wn.2d 582, 594-95, 664 P.2d 492 (1983). We defer to the trier of fact's decisions with respect to the reasonable inferences to draw from the evidence. State v. Bryant, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998).

Attempt consists of two elements: (1) intent, and (2) a substantial step. Aumick, 126 Wn.2d at 429. Thus, in order to establish attempted rape of a child in the first degree, the State had to prove beyond a reasonable doubt that Wilson intended to have sexual intercourse and took a substantial step toward having sexual intercourse with a child under the age of twelve. RCW 9A.44.073(1); RCW 9A.28.020(1); Aumick, 126 Wn.2d at 429. Sexual intercourse includes "any act of sexual contact between persons involving the sex organs of one person and the mouth . . . of another whether such persons are of the same or opposite sex." RCW 9A.44.010(1)(c).

A substantial step is an act that is "strongly corroborative" of the actor's criminal purpose. State v. Johnson, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). Mere preparation to commit a crime is not an attempt. State v. Workman, 90 Wn.2d 443, 449-52, 584 P.2d 382 (1978). But "[a]ny slight act done in furtherance of a

crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." State v. Price, 103 Wn. App. 845, 852, 14 P.3d 841 (2000).

Wilson primarily relies on State v. Grundy, 76 Wn. App. 335, 886 P.2d 208 (1994), to argue that his words, as described by B.E., do not amount to a substantial step. In Grundy, an undercover officer posing as a drug dealer approached the defendant and asked what he wanted. Grundy said he wanted "'20.'" The officer asked, "'20 what?'" and Grundy replied, "'20 of coke.'" Grundy, 76 Wn. App. at 336. The officer asked to see Grundy's money and Grundy asked to see the drugs first. The officer then arrested Grundy and a jury later convicted him of attempted possession of cocaine.

On appeal, Grundy argued there was insufficient evidence that he took a substantial step toward possession of a controlled substance. This court agreed, pointing out that Grundy did not approach the officer and asked for cocaine only in response to the officer's offer to procure drugs. This court held that while Grundy's words "evidenced an intent to acquire possession of cocaine," they were "insufficient, without more," to show a substantial step. Grundy, 76 Wn. App. at 337.

Wilson contends that like Grundy and the undercover police officer, the evidence viewed in the light most favorable to the State shows only that he and B.E. were in the "negotiation stage." But this characterization removes Wilson's words from the context of his relationship with B.E. Whereas Grundy merely engaged in negotiation with an unknown adult, Wilson's statements must be viewed through the lens of his position as an adult caretaker in B.E.'s household. B.E. was approximately five years old at the time. According to B.E., Wilson did not merely

ask if she wanted to have sexual contact. He directed her to do so. And while it is true that there is no evidence that Wilson manipulated B.E. or was otherwise responsible for her being in the bedroom, a rational juror could infer from the immediacy of Wilson's directives—"suck it like a sucker" and "go ahead"—that Wilson was prepared for sexual contact at that moment. In other words, the jury could reasonably infer from B.E.'s statements that she and Wilson were isolated and that Wilson exposed himself to B.E.

Wilson also relies on State v. Jackson, 62 Wn. App. 53, 57, 813 P.2d 156 (1991). Jackson persuaded a 14-year-old girl to enter a bedroom, using a pretext, then followed her into the room. Jackson, 62 Wn. App. at 55. Jackson approached the girl and ordered her to lift her skirt or else he would kill her. Jackson, 62 Wn. App. at 55. The girl said "no," backed up, and then screamed. Jackson, 62 Wn. App. at 55. Jackson said he "'was just joking,'" and left. Jackson, 62 Wn. App. at 55. While upholding Jackson's conviction of attempted rape, this court characterized the evidence as "slim" in comparison with the evidence in some other reported cases involving egregious violence. Jackson, 62 Wn. App. at 57.

Nothing in Jackson establishes a minimum threshold of proof in order to sustain a conviction of attempted rape or requires proof of a ruse, enticement, or other purposeful isolation in order to sustain a conviction. Jackson stands for the proposition that a reasonable jury may infer the elements of attempt even without evidence of physical contact or an express statement of intent. Here, Wilson clearly expressed his intent to have sexual intercourse with B.E., and in the context of the relationship and the circumstances, a rational jury could conclude that he took a

-11-

substantial step toward the commission of the crime. The evidence in the record is sufficient to support Wilson's conviction for attempted rape of a child. While we reverse the conviction due to the erroneous instruction, double jeopardy does not prohibit his retrial on the charge. Wright, 165 Wn.2d at 792.

### Statement of Additional Grounds

Although difficult to parse, Wilson appears to claim in his statement of additional grounds that (1) he was deprived of the effective representation of counsel because counsel failed to procure records and failed to conduct an adequate investigation, (2) he was wrongly arrested by state law enforcement on a probation violation when only federal authorities were authorized to arrest him, and (3) the State made improper statements about his prior murder conviction and illegally seized his correspondence. Wilson's vague allegations are insufficient to inform the court of the "nature and occurrence of the alleged errors." RAP 10.10(c). Also because these allegations appear to involve matters outside the record on appeal, they cannot be addressed on direct review. State v. McFarland, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995) ("a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record").

### CONCLUSION

We reverse Wilson's convictions and remand. Because of our disposition, we decline to address Wilson's claim of error based on the admission of testimony about a connection between obesity and sexual abuse. We also do not address the scrivener's error in the judgment and sentence indicating that domestic violence was

No. 74944-7-I/13

"pled and proved" for both counts. Because the State has not substantially prevailed, we deny costs on appeal. RAP 14.2.

Reversed and remanded.

Mann, J.

WE CONCUR:

Appelwick, J.                    Becker, J.

-13-